CASE 94—PETITION EQUITY—NOVEMBER 26.

# Caldwell, G. S., vs. Caldwell, J. F., &c.

APPEAL FROM LOUISVILLE CHANCERY COURT.

1. Whenever five dollars or more in money or property shall have been won and lost at unlawful gaming within twenty-four hours, and the game or play at which the money or property was won and lost has terminated, and the parties shall have ceased to play, any creditor of the loser, who may choose to assert it in the mode prescribed, will have acquired such a contingent vested right to the sum or value of the property lost in virtue of the statute as could not be divested by the loser winning at a game played at a subsequent and different time from the winner at the previous game; and the money lost at a subsequent time or game cannot be set off against what was previously won, in an action brought by a creditor of one who first was loser. (1 *Rev. Stat.*, 561–2.)

2. In actions to recover money lost by unlawful gaming, a former judgment recovered or compromised, and payments made in good faith, will be a bar to subsequent actions for the same cause of action to the extent of such payments, &c.

3. *Section* 113, *Civil Code*, makes it the duty of the court, upon motion of the defendant, before defense made, to strike out of the petition any

cause or causes of action improperly joined with the others. But by *section* 114 it is provided that the objection shall be deemed to be waived, unless made before defense.

REED & ALLEN, and STITES & BULLITT,     For Appellant,
                                                            CITED—
*Civil Code*, secs. 125, 126, 128.
*Rev. Stat., chap.* 42, sec. 4.

R. J. ELLIOTT,                                               For Appellees,
                                                            CITED—
4 *Metcalfe*, 114; *Barnes vs. Turner.*

CHIEF JUSTICE PETERS DELIVERED THE OPINION OF THE COURT:

This action was brought in March, 1866, by appellant, claiming to be the creditor of appellee, J. F. Caldwell, against the other appellees, for large sums of money which he alleges they at different times won of J. F. Caldwell by play at unlawful games.

Appellant, after setting forth in his petition the amount owing him by said J. F. Caldwell, the manner in which he became so indebted, and his insolvency, alleges in the second paragraph of his petition that appellees, A. H. Waddell and Benjamin Hinkle, did, in 1863, win from said J. F. Caldwell, at games of cards, chance, and hazard, where money, legal currency, and other property of value were bet, won, and lost, the sum of three thousand dollars.

In the third paragraph he, in the same language, alleges that said Waddell and Hinkle won of said J. F. Caldwell, in 1864, the sum of one thousand one hundred and fifty dollars.

In the fourth paragraph he alleges that A. H. Waddell, John Blakely, John Long, and Fred Sloan, did, in 1864, win from said James F. Caldwell, at games of cards, chance, and hazard, where money, legal currency, and other property of value were bet, won, and lost, nine thousand dollars.

And in the fifth paragraph he alleges that A. H. Waddell, Benj. Hinkle, Jno. Blakely, Fred. Sloan, Geo. Glasscock, John Riddleberger, John Long, and J. Vaughn, did win from the defendant, James F. Caldwell, an additional sum to the amounts before named of five thousand dollars, at games of cards, chance, and hazard, where money, legal currency, and other property of value were bet, won, and lost, all within the last five years past; and that said appellees, except said J. F. Caldwell, had "banded themselves together as gamblers and sporting characters, for the purpose of robbing, swindling, and winning said Caldwell's money and other property of value, which amounts won from said Caldwell by the other appellees will reach the aggregate amount of eighteen thousand one hundred and fifty dollars;" and then prays judgment against said James F. Caldwell for the debt set forth in the first paragraph; for judgment against said Waddell and Hinkle for the sums claimed in paragraphs two and three; against said Waddell, John Blakely, John Long, and Fred. Sloan, for the amount set forth and claimed in the fourth paragraph; and against said Waddell, Hinkle, Blakely, Sloan, Glasscock, Riddleberger, Long, and Vaughn, for the amount claimed in the fifth paragraph.

The appellees, who, as is alleged, won the money of said J. F. Caldwell, filed separate answers; but they contain substantially the same matters of defense; and, as Waddell is charged to have been interested in all the games at which the money was lost, as set forth in each paragraph of the petition, and as his answer contains all the facts relied upon in the defense by either of the others, and is as comprehensive as any of them, it is only necessary to state the substance of that answer in the examination and determination of the question urged

with much zeal by appellant's counsel, viz: that the facts stated in the answers do not constitute a bar to the action.

Waddell, after controverting properly the indebtedness of James F. Caldwell to appellant, says, for answer to the fifth paragraph of the petition, he denies he is winner individually, or from any interest he had with his co-defendants, as therein named, or either of them, in the winning of five thousand dollars, or any part thereof, within five years next before the institution of this suit. And for answer to the matters contained in the fourth paragraph, he denies that he is the winner individually, or from any interest he had with his co-defendants, Blakely, Long, and Sloan, or either of them, in the winning of nine thousand dollars, or any part thereof. He in like manner denies having won individually, or jointly with said Hinkle, the sums as charged in the second and third paragraphs of the petition.

And then, in a distinct paragraph, says: "For further answer to the matters contained in said second, third, fourth, and fifth paragraphs, he admits having at times been interested in games of chance for money played with his co-defendant Caldwell, but he denies being winner in any amount;" "for in said games said Caldwell sometimes won and sometimes lost; but at what times he won or lost, or what amounts at each or either time were won or lost by him, this defendant is unable to say, and cannot state in positive terms; yet he states that said Caldwell quit winner upon the termination of the games, and since then this defendant has never been winner of said Caldwell; and the amounts won as aforesaid by his co-defendant, Caldwell, he now sets up and pleads as a counter-claim against the amounts alleged in the petition

to have been won from said Caldwell by this defendant,
or in games in which this defendant had an interest."

The next paragraph of the answer contains an aver-
ment that J. F. Caldwell had, before the institution of
this suit, brought actions against said defendants, and
recovered judgments for the money, or some of the win-
nings claimed in the petition, and that said judgments
were satisfied, and some of the causes of action com-
promised and settled with said J. F. Caldwell before this
action was brought; and said judgments and payments
are relied upon as a bar to the same causes of action set
up in the petition in this case.

As to the effect of such judgments and payments, it is
sufficient to say, that, so far as suits were prosecuted and
judgments recovered, or compromises and payments were
made in good faith by J. F. Caldwell, all such judgments
recovered for the same causes of actions and payments
made would be a bar to the same causes of action set up
in this suit.

It is admitted in argument that the denials contained
in the second, third, and fourth paragraphs of the an-
swer, of themselves, and independent of other statements
therein, would have presented a good defense to the
causes of action set out against Waddell and others.
But it is insisted that they are so qualified by the state-
ment in the fifth paragraph, in which the winning of
money from said J. F. Caldwell is admitted, as to show
that said denials in the preceding paragraphs are the
mere legal conclusions of the pleader, and should be so
regarded.   The admission referred to is, that said Cald-
well played at games of chance for money in which he
was interested, and that Caldwell at some times lost
and at other times won; but the amounts won and lost
*at each or either time* he could not state positively; yet

he states that upon the termination of the games Cald-well quit winner, and since then he had never been winner of him—which evidently means, that the games were played by the parties at various times, with intervals between, and with varied success; and upon a general summing up the different amounts won and lost by each up to and including the result of the last playing, Caldwell had won more than he lost, and they undertook to plead their losings with Caldwell at one time as an off-set against their winnings at a different time from him.

The proper solution of that question depends upon the meaning of the second section of the statute against gaming (1 *vol. Rev. Stat., pp.* 561–2), which is as follows :

" If any person shall lose to another at one time, or within any twenty-four hours, five dollars or more, or property or other thing of that value, and shall pay, transfer, or deliver the same, such loser, or any creditor of his, may recover the same or the value thereof from the winner, or any transferee of the winner, having notice of the consideration, by suit brought within five years after the payment, transfer, or delivery."

The reasonable and legitimate construction of this *section* is, that whenever five dollars or more in money or property shall have been won and lost at unlawful gaming within twenty-four hours, and the game or play at which the money or property was won and lost has terminated, and the parties shall have ceased to play, any creditor of the loser, who may choose to assert it in the mode prescribed, will have acquired such a contingent vested right to the sum or value of the property lost, in virtue of the statute *supra*, as could not be divested by the loser winning at a game played at a subsequent and different time, from the winner at the previous game, any

amount; and the money lost at a subsequent game cannot be set-off against what was previously won, in an action brought by a creditor of the one who first was loser. Whether it would be a good set-off in an action brought by the first loser himself, we need not decide in this case.

There is certainly a misjoinder of causes of action in the petition; and by *section* 113, *Civil Code*, it is made the duty of the court, upon motion of the defendant before defense made, to strike out of the petition any cause or causes of action improperly joined with others. But by *section* 114, *ibid,* the objection must be deemed as waived, as it was not made as provided for in the preceding *section*.

We are of opinion, therefore, that it was erroneous to dismiss appellant's petition, and the judgment must be *reversed,* and the cause remanded, with directions that it be refered to the master to ascertain and report what amounts or sums of money were won by the defendants named separately in the several counts, from said James F. Caldwell, the date and amount of each winning, and by whom won, and also ascertain and report for what particular sums lost by him James F. Caldwell brought actions to recover the same of said defendants, which defendants, and what sums, if any, were paid to him in consequence of said suits, and the dates thereof, and for further proceedings consistent herewith.